OPINION of the Court, by
Judge Losan.
East-land being the purchaser of an undivided moiety of 228 acres of land, including the Greenville springs near Har-rocjs[1ur„ exhibited his bill to coerce a specific execu-q’ r tion ot the contract.
jqe charges not only the purchase of a moiety in the hind and springs, but likewise of one third of certain property at the springs, consisting of many and various articles particularly specified ; and one third of the money recelveci the springs from the 1st of December 1807, to the 5th of August 18G8, free from all expense, except for repairing cabins during that summer. And alleges that the amount of the money received was represented by the defendant to be from 1300 to § 1500 ; the whole of which he states is retained by a partner, who was in possession, for the purpose, as he says, of discharging debts contracted in behalf of the firm.
Again, it is alleged that of the various articles sold to' him he has been able to procure but an inconsiderable part, on account of the property belonging to others, who had rented it, and ia which the firm had no other interest than as rented property : that he has overpaid the estimated value of a moiety in said land and springs j and that the consideration stipulated to be given was *275 ^ 195® paid at the time of the purchase, $ 200 mare payable in August 1811, and a tract of land containing 10© acres in Woodford county at $ 1200, but for the conveyance of which he pledged only his personal assurance, and that upon condition that the defendant should in every particular rigidly and punctually comply with every stipulation on his part.
The defendant does not positively deny the contract as charged in the bill : states that he sold his interest in the land'and springs for 1000/. and sets forth the payments made and which were to be made ; admits that the complainant was to be vested with his interest (except horses) in the partnership property and the proceeds; but avers that he was to contribute his proportion of the expenses incurred ; and states that a writing to this effect was prepared by the complainant, and he believes signed by them both : does not admit that the writing referred to in the bill was executed by him, but avers that if it were, it was done under the most unqualified impression that its contents were as he has stated : denies the. condition set up as to the Woodford land, and states that it formed an absolute and essential part of the contract, and was not intended to depend on, farol stipulations. He denies also that he represented all the property specified in the bill as belonging to the firm ; that much thereof was generally known to be rented, particularly the beds, of which there were between 30 and 40 j and that the complainant himself had shortly preceding the contract been sometime at the springs, where he might have obtained the accessary information.
With respect to the writings referred to ir» the hill, the execution of which is proved by the subscribing witnesses, they seem to be in substance detailed in the bill. But neither of them contains any provision in relation to the Woodford land — neither, specifies the consideration to be given by Eastland for the property he had purchased.
The following may be assumed as facts established ½ the cause:
1. That more than a year before the present contract: the defendant sold one moiety of said land asd springs for 2500 dollars j when she virtue of the water ansi reputation of the springs were less known aad sat saSmgk. *276 in public estimation ; when the improvements at the springs were less and not so valuable ; and when preparation for accommodation was inferior, and entertainment more difficult to be obtained.
2. That in one house, erected after the first, and before the second contract, there was expended about 700 dollars, besides other buildings which were made»
3. That the defendant had^ refused, when the improvements were less valuable, and the springs not more celebrated for their worth, for one moiety, a tract of land estimated at about 2800 dollars, for which he af-terwards gave 3000 dollars, with the addition only of a small growing crop.
4. That 1000/. was supposed to be about the value óf one moiety of said land with its appurtenances, at the time of said contract.
These constitute the most important facts in she cause. But to these may be added one more, relating to the characters and talents of the complainant and defendant for making bargains. Whilst the complainant is celebrated for his adroitness in this particular, and seems to have obtained the reputation of a sharper, the defendant has assigned to him a quite different character.
Upon these facts it remains to decide whether the complainant appears in the attitude of a purchaser clothed with an equitable and conscientious demand upon the legal and equitable discretion of the court for a spe-. cific enforcement of the alleged contract ?
The rule is too familiar to need either argument or authority to support it, that a contract, to be specifically enforced, must be reasonable and fair in all its essential parts, not unjust or hard and unconscientious. If in its own terms the contract bespeak evident mistake, deception or gross ignorance on the one side, of what is intended, while on the other there are stipulations exclusively beneficial, perverting a valuable consideration into a mere nothing, equity should refuse its interposition in aid thereof.
In the present case a property estimated at about 1000/. a price evidently within the contemplation of both parties, is claimed under éxpressions in the contract which it is impossible to believe, had they been correctly understood, the defendant would have consented to.* Instead of receiving an additional sum of 1400 dollars, *277 a drawback would be made of a great part of that which had been paid. This is certainly contrary to the just expectation of the complainant himself, if he acted with good faith in making the contract. That the 100 acres of land, at 1200 dollars, formed a part of the consideration stipulated to be given, is evident from the supposed value of the purchase and the evidence in the cause ; yet this essential part of the consideration rests upon parol promise only — not obligatory, but depending on the mere will of the complainant himself whether it will be complied with. This presents such an inequality in the terms of the contract — such want of reciprocal obligation on the parties, as to render it the more incumbent on the complainant to shew a readiness on his part to perform, before he should expect to coerce in equity the defendant to a compliance : lor the rule is, that he who asks equity must do equity.
But it is alleged by the complainant that the 100 acres of land was to be conveyed only upon the condition that the defendant complied in every particlar with the agreement; and it is urged that he has failed to do so, and has therefore no demand to this land.
On this state of the case the contract would be unequal, irreciprocal and unreasonable. Suppose it complied with in every particular by the defendant, and still it would be optional with the complainant whether he would comply with this parol stipulation to convey land, a part of his agreement not inserted in the writing.
But we will carry this inquiry farther, and suppose that upon the alleged undertaking of the defendant being complied with in every particular, that the complaip-ant could then be compelled to perform his parol .assurance, and it will not be difficult to shew that the case is such as ought not to be specifically enforced : not merely because the complainant has-not shewn a readiness to comply on his part, but because it is obvious that he has been deceived in the extent of the stipulations as alleged against him. When, for instance, he sqld his interest, represented to be one third, in the personal estate at the springs, and in the specification, of articles mentions beds, but without expressing the number or estate in them, can it be supposed that he meant to make himself responsible for the absolute right in *278 one third of nearly forty beds and furniture which were, onbT rented, and thereby setoff in this single article several hundred dollars from the estimated value of the land and springs ? Indeed the presumption would seem, warranted that he knew but little about the beds at the springs ; he was not in possession, and seems not to have concerned with or known the particular arrangements made there from time''to time by his partner in, the actual possession. So with respect to the profits and receipts at,the springs, without any estimate for expenses, would produce another setoff of several hundred dollars. And in this manner produce nearly the singular effect of giving to his purchaser the land and springs,, supposed to be worth about 1000/. in consideration that he would leave a part of the profits and receipts to pay incidental expenses.
There is some gross and palpable error in this business, and although not within the grasp or explanation, of the chancellor, yet too obviously lurks, to receive the interposition of a court of equity for a specific enforcement. The case, to say the least of it, presents a contract which is unreasonable, hard and unconscientious, andas such cannot be specifically enforced.
The decree, therefore, of/ the circuit court must be, affirmed with costs.